IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BRADLEY M. CLAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:25-cv-57 (MTT) |
| | ) |
| FRANK KENDALL, | ) |
| | ) |
| Defendant. | ) |

### ORDER

Bradley Clay brought this action against Frank Kendall, the Secretary of the Department of the Air Force. ECF 1. Clay asserts claims of disability discrimination, failure to accommodate, and retaliation under the Rehabilitation Act, 29 U.S.C. § 701. *Id.* ¶¶ 88-133. Kendall moves to dismiss in part for failure to exhaust and failure to state a claim. ECF 6. For the reasons that follow, Kendall's motion to dismiss (ECF 6) is **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

Clay's claims arise out of his employment at Robins Air Force Base in Houston County, Georgia ("Robins"). ECF 1. Clay alleges that his supervisors at Robins failed to accommodate him for his disabilities, that they discriminated against him based on his disabilities, and that they retaliated against him for requesting an accommodation and filing a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶¶ 88-133.

**A. Factual Background**

Prior to his employment as a civilian, Clay was "an active duty Airman in the United States Air Force." *Id.* ¶ 8. During his service in the Air Force, Clay was deployed to a base in Iraq. *Id.* ¶ 18. "[A]s a direct result of experiences … during his active duty military service," Clay was diagnosed with Post-Traumatic Stress Disorder ("PTSD"), Major Depressive Disorder, and Major Anxiety Disorder. *Id.* ¶¶ 16-20. Clay's conditions cause depression, anxiety, and panic attacks. *Id.* ¶¶ 21-27.

Clay alleges that he was experiencing such symptoms when he began his employment at Robins as a Non-Destructive Inspection Technician ("NDI Technician") in 2019. *Id.* ¶ 12. As an NDI Technician, Clay "spent some time on the aircraft flight line, a hangar used to service Defendant's aircraft." *Id.* ¶ 15. Clay "quickly found that there were occasions in which loud noises, including the sonic booms emanating from aircraft traveling to and from Robins Air Force Base, would cause [ ] Clay to experience … 'panic attacks.'" *Id.* ¶ 24.

Clay consulted mental health professionals and conducted "a significant amount of personal research," which led him to the conclusion that "a service dog would be able to provide [ ] Clay with a calming presence, and … provide the specific types of physical contact that [he] needs in order to alleviate an episode of PTSD." *Id.* ¶ 38. Clay discovered that certain organizations provide service dogs to veterans at no cost. *Id.* ¶ 40. However, according to Clay, those organizations require applicants to obtain their employers' approval. *Id.* ¶ 41.

On August 23, 2022, Clay met with his supervisors, Kyle Machen and Jennifer Tribble, to request an accommodation. *Id.* ¶¶ 35, 45-46. Clay requested two

accommodations: (1) "[u]se of a service animal [with Personal Protective Equipment] for prevention/minimizing effects of PTSD panic attacks," and (2) "[u]se of Bluetooth active noise cancelling earbuds or headphones with passthrough technology to hear ambient sounds but block sounds that can trigger PTSD." *Id.* ¶ 46. During the meeting, Clay alleges that his supervisors denied his request for headphones with passthrough technology. *Id.* ¶ 50. According to Clay, Tribble also expressed concern about his request for a service animal. *Id.* ¶ 57.

After the meeting, Clay submitted an accommodation request form and a letter from his psychiatrist to Robins' "Disability Program Manager." *Id.* ¶ 54. In the form, Clay sought the same accommodations he requested during the August 23, 2022 meeting. *Id*. On August 30, 2022, the defendants allegedly denied both of his requested accommodations, but allowed Clay "to take breaks when panic attacks occur[ed]" and use double-hearing protection. *Id.* ¶¶ 52, 58. According to Clay, "conversation about the request for approval to use a service dog continued over the course of the following months" between Clay, Tribble, Machen, and other supervisors. *Id.* ¶ 63. At some point during the accommodation process, Tribble contacted Robins' director of safety to solicit his "analysis and opinion concerning the feasibility of the request." *Id.* ¶¶ 65-66.

On September 14, 2022, the director of safety issued a memorandum opining on the feasibility of Clay's requested accommodation. *Id.* ¶ 68. According to Clay, the director "expressed concerns of a service dog due to hazards present in this workplace, including exposure to chemicals and the type of flooring in that area." *Id.* ¶ 70. Additionally, the director "expressed his expectation that the other employees … do not expect to see a dog in this workplace, and it could cause problems for employees who

have allergies to dogs or had experienced a traumatic experience with a dog as a child." *Id.* ¶ 71. Clay alleges the director also "determined that Mr. Clay was unable to safely perform the essential functions of his job." *Id.* ¶ 72. Clay alleges that the memorandum was added to his personnel records. *Id.* ¶ 68.

Following the denial of his accommodation request, Clay initiated an action with the EEOC "in early October 2022." *Id.* ¶ 78. Around that time, Clay also received "a lateral promotion to the position of NDI Engineer." *Id.* ¶ 80. While his new position was still at Robins, he would be working under a different organization within the Air Force. *Id*. Clay started his new position on November 6, 2022. *Id.*

According to Clay, Tribble and the disability program manager "continued to be assigned to [his] requests for reasonable accommodation and the ongoing conversations concerning the requests continued." *Id*. ¶ 81. However, after Clay started his new position, he made a new request for the same accommodations to his new supervisor. *Id.* ¶ 82. Clay alleges his new supervisor denied Clay's accommodation request "for the sole reason that he was going to rely on the decision" of Clay's previous organization. *Id*. Eventually, in November 2024, Clay's accommodation request was granted without modification. *Id.* ¶ 83.

B. Procedural History

On September 6, 2022, Clay contacted an EEO counselor, alleging that the defendants discriminated against him based on his disability. *Id.* ¶ 84. He filed his formal EEO complaint on February 6, 2023. *Id.* Clay had a two-day hearing before an administrative law judge ("ALJ") on October 1 and 2, 2024. *Id*. ¶ 85. On October 9, 2024, the ALJ entered her final decision in favor of Robins. *Id.* ¶ 86.

Clay filed this action on February 18, 2025. ECF 1. Clay asserts three claims under the Rehabilitation Act: (1) disability discrimination, (2) failure to accommodate, and (3) retaliation. *Id.* ¶¶ 88-133. On April 21, 2025, Kendall moved to dismiss in part for failure to exhaust and failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF 6.

## II. STANDARDS

### A. Exhaustion

Plaintiffs proceeding under the Rehabilitation Act must exhaust their administrative remedies by filing a charge with the EEOC before bringing their claims in federal court.[1] *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5); *Shiver*, 549 F.3d at 1344 (applying Title VII exhaustion requirements to claims under the Rehabilitation Act). The defense of failure to exhaust non-judicial remedies raises a matter in abatement. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (citations omitted); *see Chesnut v. CC Servs., Inc.*, 2020 WL 1433876, at *3 (M.D. Ga. Mar. 24, 2020) (applying *Bryant* to claims subject to Title VII). Like other matters in abatement, *e.g.*, jurisdiction, venue, and service of process, a district court may—indeed, necessarily must—consider facts outside the pleadings and resolve factual disputes to determine whether an exhaustion defense has merit "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Id.* at 1376 (citations omitted); *see also, e.g., Snow v. Cirrus Educ. Grp.*, 2017 WL 6001502, at *3 (M.D. Ga. Dec. 4, 2017); *Akkasha v. Bloomingdale's, Inc.*, 2019 WL

---

[1] "The remedies, procedures, and rights of Title VII are available to plaintiffs filing complaints under the Rehabilitation Act." *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (2008).

7480652, at *3 (S.D. Fla. Dec. 18, 2019).[2] Plaintiffs who allege disability discrimination by their employers bear "the burden of proving all conditions precedent to filing suit[.]" *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001). Here, both parties rely on matters outside the pleadings and neither party claims that the record has not been sufficiently developed.

**B. Failure to State a Claim**

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*,

---

[2] Under *Perttu v. Richards*, parties may have a right to a jury trial on exhaustion "when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment." 605 U.S. 460, 468 (2025).

297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

### III. DISCUSSION

Kendall first contends that Clay failed to exhaust any claims arising after his November 2022 promotion. ECF 6 at 6-10. Kendall also argues that Clay failed to state a claim for disability discrimination and retaliation because he did not plausibly allege an adverse employment action. *Id*. at 10-14.

### A. Clay Failed to Exhaust His Failure to Accommodate Claim Arising After His November 2022 Promotion

Kendall argues that Clay failed to exhaust his claims arising after his November 2022 promotion because he did not assert those claims in his EEO complaint. *Id.* at 6-10. Clay contends that his post-November 2022 claims were properly exhausted because they were either "reasonably expected to grow from," or a "continuing violation" of, the allegations in his EEO complaint. ECF 8 at 12-17.

*1. Clay's post-November 2022 failure to accommodate claim did not grow out of his EEO complaint.*

"The purpose of [the] exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory v. Ga. Dep't of Human Res.,* 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). Thus, claims in a Rehabilitation Act lawsuit are typically limited to "the scope of the EEOC investigation

that can reasonably be expected to grow out of the charge of discrimination." *Id*. at 1280 (internal citation omitted). Claims that "amplify, clarify, or more clearly focus" the allegations in the EEO complaint are permitted. *Id.* at 1279 (internal quotation marks and citation omitted). However, "allegations of new acts of discrimination are inappropriate." *Id.* at 1279-80.  Still, "the scope of an EEOC complaint should not be strictly interpreted," and courts should be "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." *Id.* (internal quotation marks and citation omitted).

Here, Clay alleges, "after [he] obtained a lateral transfer in or around November 2022, Defendant refused to provide [Clay] with the reasonable accommodations as he had requested, relying solely on the decision that had been made while [Clay] was in his prior position."³ ECF 1 ¶ 122. At Clay's final EEO hearing, the ALJ specifically stated:

> Prior to the hearing, Complainant did not seek to amend this complaint to include a failure to accommodate him in his new position, and he did not develop the hearing record on this second alleged failure to accommodate or give the Agency notice of his intent to raise this allegation as part of this case.
>
> Therefore, to the extent Complainant alleges the Agency failed to accommodate him in his new position after November 2022, I find it to be beyond the scope of the accepted claims, and I am unable to consider it.

---

³ Kendall appears to move for dismissal of all of Clay's claims that arise after November 2022, not just Clay's post-November 2022 failure to accommodate claim. *See* ECF 6 at 10 ("*[A]ny* claims related to alleged discrimination after November 6, 2022, should be dismissed.") (emphasis added). As discussed below, Clay's only remaining claim is for retaliation. Unlike discrete acts of new discrimination, retaliation claims not asserted in an EEO complaint are often found to grow out of an EEO complaint because "[i]t is the nature of retaliation claims that they arise after the filing of the EEOC charge." *Baer v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) (quoting *Gupta v. East Texas State Univ.*, 654 F.2d 411 (5th Cir., 1981)). Here, it is unclear whether any of the alleged retaliatory acts occurred after November 2022. Regardless, any post-November 2022 retaliation claim would be properly exhausted because such a claim could be reasonably expected to grow out of Clay's EEO complaint. *See Gregory*, 355 F.3d 1277 ("The facts alleged in [the plaintiff's] EEOC charge could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of race and sex discrimination.").

ECF 6-2 at 27:6-17. This alone demonstrates that Clay's new failure to accommodate claim could not have been reasonably expected to grow out of the EEOC's investigation. Review of Clay's EEO complaint and his declaration submitted to the ALJ only confirms that conclusion.

Apart from listing his job title as "NDI Engineer," Clay made no mention of his November 2022 promotion or his second accommodation request in his EEO complaint. ECF 8-1 at 4-5. Despite the EEOC form's direction to "[p]repare a separate complaint form for each office which you believe discriminated against you," Clay completed only one form. *Id.* at 1. The form directed Clay to identify who he believed discriminated against him, and Clay named only Tribble, his former supervisor, and Urbansky, the Robins' Safety Director. *Id*. He made no mention of his new supervisor, to whom he alleges he made his second accommodation request. *Id.* Nor did he mention his new supervisor or any other witnesses to his second accommodation request when the form asked Clay to identify witnesses who may contribute to the investigation. *Id.* at 2. And, most importantly, Clay's factual allegations in his EEO complaint detail only events surrounding his first accommodation request. *Id.* at 4-5; *see Jimenez v. United States Attorney General*, 146 F.4th 972, 990 (11th Cir. 2025) ("The facts alleged in the charge matter most for determining what can reasonably be expected to grow out of an EEOC charge." (citation modified)).

Clay contends "[t]he ongoing failure to provide a reasonable accommodation, both before and after Clay was promoted, was not only alleged on the face of Clay's complaint, it [was] also the type of allegation that should be see[n] as growing out of the four corners of that complaint, and a reasonable investigator would have certainly

-9-

understood the post-November 2022 allegations to form the basis of Clay's complaint." ECF 8 at 16. As support, Clay cites the allegation in his EEO complaint that his discrimination had been "ongoing since" August 23, 2022. ECF 8 at 12; *see* ECF 8-1 at 1. Clay also cites his declaration submitted to the ALJ, in which he explained that "management in [his] new position … indicated that the same requests for accommodations … will be denied as a result of what Mr. Urbansky indicated in his memorandum." ECF 8-2 at 15. However, Clay's passing references to a new accommodation request are not enough to demonstrate that a reasonable investigator would have known Clay intended to assert a second failure to accommodate claim. That is particularly true here, where the ALJ explicitly declined to consider that claim because the record had not been developed.

To adequately evaluate a failure to accommodate claim, the ALJ needed details about Clay's new position, such as his new job duties, his new work environment, and his new supervisors' actions. *See Hollbrook v. City of Alpharetta, Georgia*, 112 F.3d 1522, 1527 (11th Cir. 1997) ("[W]hat is reasonable for each individual employer is a highly fact-specific inquiry and will vary depending on the circumstances and necessities of each employment situation."). The ALJ explicitly stated that those facts were not developed in the administrative record because Clay raised the post-November 2022 failure to accommodate claim "for the first time" at his EEO hearing. *See* ECF 6-2 at 26:15-20; 27:6-17. Thus, with respect to Clay's post-November 2022 failure to accommodate claim, the EEOC did not have the opportunity "to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory,* 355 F.3d at 1280 (quoting

*Evans*, 696 F.2d at 929). Accordingly, Clay failed to exhaust his post-November 2022 failure to accommodate claim.

    *2. The continuing action doctrine does not apply.*

In a one-sentence argument, Clay contends that if the Court is unconvinced that his post-November 2022 claim grew out of his EEO complaint, it "could also find that Clay's post-November 2022 allegations consist of the same continuing violation" of his earlier failure to accommodate claim. ECF 8 at 2. This Court has previously addressed a similar argument in *Humble v. Cirrus Educ. Grp., Inc.*, 2017 WL 6001501, at *3 (M.D. Ga. 2017). In *Humble*, the plaintiff asserted claims for disparate treatment and hostile work environment in her judicial complaint, but failed to raise facts relating to those claims in her EEO charge. *Id.* The plaintiff appeared to contend that her claims were exhausted under the continuing action doctrine because she indicated that her discrimination was a continuing action on her EEO charge. *Id.* at *3 n.4. As the Court explained in *Humble*, the continuing action doctrine applies only when "the plaintiff has timely filed a claim regarding an ongoing discriminatory act," not when the plaintiff asserts claims based on "discrete actions for which administrative remedies must be exhausted." *Id.* (citing *Ledbetter v. Goodyear Tire and Rubber Co., Inc.*, F.2d 1169, 1179 (11th Cir. 2005)). Here, Clay's claims are based on two separate accommodation requests, which required analysis of two distinct, albeit related, sets of factual circumstances. Thus, the continuing violation doctrine does not apply to Clay's post-November 2022 failure to accommodate claim.

Accordingly, Kendall's motion to dismiss for failure to exhaust is **GRANTED** with respect to Clay's post-November 2022 failure to accommodate claim. That claim is, therefore, **DISMISSED**.

**B. Clay Has Failed to State a Claim for Disability Discrimination Under the Rehabilitation Act**

Next, Kendall argues that Clay failed to plausibly allege he suffered an actionable adverse action in support of his disability discrimination claim. ECF 6 at 10-14. In his response brief, Clay concedes that he "failed to include several allegations in support" of his disability discrimination claim. ECF 8 at 17-18. Clay has, thus, abandoned that claim. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atl.*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (collecting cases) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").[4]

The Court agrees that, as pled, Clay's complaint does not plausibly allege an adverse action as required to state a claim for disability discrimination. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354-55 (2024) ("To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term

---

[4] Rather than moving for leave to amend his complaint, Clay states his disability discrimination claim "should be allowed to proceed once Clay is given an opportunity to amend in order to clarify this claim." ECF 8 at 18. Even if that statement could be read as a motion to amend, and it cannot, a request to amend in a responsive brief is not a properly raised motion for leave to file an amended complaint. *See Newton v. Duke Energy Fl, LLC*, 895 F.3d 1270, 1288 (11th Cir. 2018) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.").

or condition of employment."); *see also Stanley v. City of Sanford, Florida*, 606 U.S. 46, 61 (2025) (applying Muldrow's Title VII discrimination standard to a disability discrimination claim)

Thus, Clay's disability discrimination claim is **DISMISSED without prejudice**.

## C. Clay Has Stated a Retaliation Claim under the Rehabilitation Act

Kendall also argues that Clay failed to plausibly allege he suffered a materially adverse action and, thus, failed to state a claim for retaliation under the Rehabilitation Act. ECF 6 at 10-13; 13 at 8-10.

To establish a *prima facie* case of retaliation under the Rehabilitation Act, "a plaintiff must show that (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir. 2000); *see Burgos-Stefanelli v. Sec'y, United States Dep't of Homeland Sec.*, 410 F. App'x 243, 245 (11th Cir. 2011) ("[W]e assess retaliation claims pursuant to the Rehabilitation Act under the framework we use in assessing Title VII retaliation claims."). However, at the pleading stage, a plaintiff need not allege "specific facts establishing a *prima facie* case." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270 (11th Cir. 2004). Rather, the plaintiff "need only lay out a short statement of the claim showing that the pleader is entitled to relief." *Id.*

Unlike claims of disability discrimination[5], retaliation is actionable if the alleged mistreatment "well might have dissuaded a reasonable worker from making or

---

[5] To prevail on a disability discrimination claim, the plaintiff "must show some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 354-55. Previously, courts required

-13-

supporting a charge of discrimination." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (quoting *Burlington*, 548 U.S. at 68). However, "Title VII … does not set forth 'a general civility code for the American workplace.'" *Burlington*, 548 U.S. at 68 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)). The Supreme Court has emphasized that the standards for judging materiality are intended to separate "significant from trivial harms" such as "petty slights, minor annoyances, and simple lack of good manners." *Id*. at 68. The Supreme Court has also emphasized that context matters, and whether an action qualifies as materially adverse will often depend on the particular circumstances. *Id.* at 69 ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."); *see Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 648-49 (11th Cir. 2019) ("The test for materiality is 'objective,' though 'the significance of any given act of retaliation will often depend upon the particular circumstances.'").

Here, Clay alleges that "as a direct result" of his accommodation requests and his initiation of EEO proceedings, "documentation and information was added to [Clay's] personnel file concluding that [he] was unable to safely perform the essential functions of his job." ECF 1 ¶ 129. Clay also alleges that his supervisor, Tribble, testified his EEO complaint was "frivolous, without merit, and … not based on facts" and that she publicly

---

some change to the terms and conditions of employment to assert a retaliation claim as well. *E.g.*, *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). However, in *Burlington Northern and Santa Fe RY. Co. v. White*, the Supreme Court held that, unlike Title VII's antidiscrimination provision, "the scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." 548 U.S. 53, 67 (2006).

-14-

accused him of engaging in "fraud, waste, and abuse of Government funds." *Id.* ¶¶ 79, 131-32

First, Kendall argues that the memorandum added to Clay's personnel file is not an adverse action sufficient to state a retaliation claim. ECF 6 at 10-13. Kendall cites *Davis v. Town of Lake Park, Fla.,* in which the Eleventh Circuit held that a negative performance memorandum is not actionable unless it resulted in "[a] more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline." 245 F.3d at 1241. However, the claim at issue in *Davis* was an anti-discrimination claim, and, thus, the Eleventh Circuit analyzed whether the alleged action "impact[ed] the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." *Davis*, 245 F.3d at 1235, 1239. Again, that is not the standard here—Clay need only plausibly allege the defendant acted in a way that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68; *Monaghan*, 955 F.3d at 861.

Kendall further contends that Clay has not plausibly alleged an adverse action because he was promoted after the memorandum was added to his personnel file. ECF 6 at 12-13. But the Eleventh Circuit has rejected the contention that retaliation claims are invalid simply because the plaintiff subsequently received an employment benefit.[6] *See Crawford*, 529 F.3d at 973 ("Again, we think it important to emphasize that an employer cannot undo the harm its actions have caused, and thereby avoid liability, simply by attempting to make the employee whole retroactively.").

---

[6] In his reply brief, Kendall states that Clay "does not seem to dispute that the filing of a personnel file, without more, cannot be considered retaliation. ECF 13 at 8. However, in Clay's response to Kendall's motion to dismiss, he argues that the memorandum, along with Tribble's public accusations, constituted an adverse action. *See, e.g.,* ECF 8 at 19.

Finally, Kendall argues Clay's allegations that his supervisor publicly accused him of fraud, waste, and abuse "fall woefully short of the pleading standards in the Federal Rules of Civil Procedure." ECF 13 at 9. The Court disagrees. Clay alleged that his supervisor, Tribble, publicly accused Clay of engaging in fraud, waste, and abuse of government funds because Clay filed an EEO Complaint. ECF 1 ¶¶ 131, 132. Although thin to the point of emaciation, Clay's allegations of his supervisor's actions, along with the inclusion of the memorandum in his personnel file, plausibly allege that Clay's supervisors acted in a way that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Monaghan,* 955 F.3d at 861 (quoting *Burlington*, 548 U.S. at 68).

Because Clay has plausibly alleged that he suffered an adverse action, Kendall's motion to dismiss Clay's retaliation claim for failure to state a claim is **DENIED.**

## IV. CONCLUSION

In sum, the Court concludes that Clay failed to exhaust his failure to accommodate claim arising after November 2022. Additionally, Clay has failed to state a claim of disability discrimination under the Rehabilitation Act. However, Clay has plausibly alleged a retaliation claim under the Rehabilitation Act. Accordingly, Kendall's motion to dismiss is **GRANTED** in part and **DENIED** in part. Clay's failure to accommodate claim arising after his promotion in November 2022 and his disability discrimination claim are **DISMISSED without prejudice**. Clay's failure to accommodate claim arising prior to November 2022 and his retaliation claim will proceed for further factual development.

-17-

**SO ORDERED**, this 18th day of December, 2025.

                                                <u>S/ Marc T. Treadwell</u>
                                                MARC T. TREADWELL, JUDGE
                                                UNITED STATES DISTRICT COURT